MATTER OF "BEECHCRAFT B-95, #N21JC"

In Fine Proceedings

LOS-10/2.1019

*Decided by Board October 18, 1979*

(1) Where official records of the Service revealed that no clearance was granted to the pilot's aircraft; the telephone number allegedly called by the pilot was the listing for a Port of Entry not responsible for clearing aircraft at the pilot's landing site; and the inspection bill received by the pilot was for time expended by an inspection officer waiting for the aircraft, rather than for any actual inspection, the pilot failed to be inspected in accordance with section 239 of the Act and liability to administrative fine was incurred.

(2) Despite liability under section 239 of the Act, proceedings to collect fine cancelled in light of the Immigration and Naturalization Service's failure to grant the pilot's request for personal interview, as grant of requested interview is mandatory under 8 C.F.R. 280.12.

BASIS FOR FINE:   Section 239 I&N Act (8 U.S.C. 1229)

In re:   *"BEECHCRAFT B-95, #N21JC"*, which arrived at Lindbergh Field, San Diego, California, from foreign, on July 9, 1975. Person involved: EDWARD IGLESIAS, Pilot

ON BEHALF OF CARRIER:   Pro se

BY:   Milhollan, Chairman; Maniatis, Appleman, Maguire and Farb, Board Members.

In a decision dated September 28, 1976 a District Director denied the pilot's request for cancellation of the $500 fine imposed upon him on May 10, 1976 for a violation of section 239 of the Immigration and Nationality Act, 8 U.S.C. 1229. The pilot appealed to this Board and on April 7, 1977, we remanded the record to the District Director for consideration of the pilot's statement on appeal that he was inspected in accordance with section 239 of the Act. In a memorandum dated September 20, 1977, the District Director stated that he made no change in his original decision. On August 14, 1978 we again remanded the record to the District Director to enable him to indicate the reasons for his decision. In a decision dated May 7, 1979 a new District Director again denied the pilot's request for cancellation of the fine and certified the case to us for review. We reverse.

Section 239 of the Act authorizes the Attorney General to provide, by regulation, reasonable requirements for aircraft in civil air navigation with respect to giving notice of intention to land in advance of landing, or notice of landing. Any person who violates any regulation made under that section is subject to a civil penalty of $500 which may be remitted or mitigated through proceedings prescribed by the Attorney General.

8 C.F.R. 239.2(b) requires advance notice of arrival for aircraft to be inspected "to enable the officers designated to inspect the aircraft to reach the airport of entry ... prior to the arrival of the aircraft." 8 C.F.R. 239.2(c) provides that passengers or crewmen required to be inspected shall not be permitted to depart without permission from an immigration officer.

The record indicates that on July 9, 1975, the United States citizen pilot entered the United States by air from Mexico, arriving at Lindbergh Field, San Diego, California. The Service alleged that the pilot, when giving advance notice of his arrival, indicated that he would arrive at Lindbergh Field at approximately 6:20 p.m. A Service inspector arrived at the field at approximately 5:40 p.m., and was informed by the F.A.A. Radio Office that the pilot's aircraft had landed at 5:20 p.m. and had departed at 5:45 p.m. without remaining for inspection.

The Report of Investigation included in the record indicates that in a Service interview conducted in the office of the pilot's attorney on January 8, 1976, the pilot stated that he had been inspected, but could not remember the name of the inspector, the time of day the inspection occurred, or whether he had filled out any forms. However, in his appeal statement dated October 7, 1976, the pilot claimed that after landing at Lindbergh Field, he immediately proceeded to the area set aside for inspection and that despite his advance notice of arrival, no inspection officer was there to meet him. Therefore, as had been his practice in the past when arriving after 5 p.m., he called a telephone number posted on the window of the inspector's office and a person who identified himself as the Duty Officer then cleared him to leave. The pilot claimed that before clearing him, the Duty Officer asked him for his aircraft number and type, his pilot's number, his home address and whether he had purchased anything in Mexico or had any passengers on board.

We agree with the District Director's finding that the pilot's previous statements regarding his inspection diminish the credibility of his contentions on appeal. Despite his many correspondences with the Service in connection with this case, on appeal, the pilot for the first time explained in detail that he had actually obtained telephonic clearance. In light of his prior statements, we are unable to accept the

pilot's current rendition of what occurred on the day in question. A review of the official records maintained by the Service revealed that no clearance was granted to the pilot's aircraft on July 9, 1975. In addition, a Service investigation revealed that the telephone number called by the pilot was the listing for the Service Port of Entry at San Ysidro, California and that San Ysidro was not responsibile for clearing aircraft at Lindbergh Field.

In support of his claimed inspection, the pilot submitted a bill in the amount of $17.36 for "services performed in connection with the inspection of persons arriving by private U.S. aircraft at San Diego, California". He further related that the District Director of Customs closed this case without penalty after conducting a thorough investigation of the matter. Upon inquiry, the District Director of Customs stated that the case was terminated on the belief that the bill presented by the pilot was evidence that an inspection actually occurred. However, according to the inspection officer who was sent to meet the pilot's aircraft, the bill was sent for the time expended by him waiting for the aircraft, rather than for any actual inspection. We take administrative notice that under the applicable Service rule on immigration inspection extra compensation, section 10 of Part 2818, Administrative Manual (p. 2818.09), extra compensation is due where immigration officers report for inspection duty and through no fault of the Service, an actual inspection is not performed. Based on the foregoing, we are not convinced that the bill submitted by the pilot establishes that he was actually inspected. We conclude that the pilot failed to be inspected in accordance with section 239 of the Act and that as an experienced pilot who has made over 100 crossings over the United States-Mexican border, he should have known that such an inspection was required.

Despite the pilot's failure to be inspected, we find that the Service failed to comply with 8 C.F.R. 280.12, which provides, in pertinent part, that:

> "within 30 days following the service of the Notice of Intention of Fine . . . any person upon whom a notice under this part has been served may file with the District Director a written defense . . . stating whether a personal interview is desired . . . If a personal interview is requested, the evidence in opposition to the imposition of the fine and in support of the request for mitigation or remission may be presented at such interview. An interview *shall* be conducted if requested by the party as provided hereinabove . . . " (Emphasis supplied).

The record indicates that in a letter dated March 17, 1976 the pilot requested a personal interview pursuant to the above regulation and asked that the Service officer investigating the case be present at the interview. The Service apparently did not receive that letter and another request was made on May 24, 1976. Despite these requests, no

149

interview was conducted. In view of the mandatory language of the regulation, the pilot should have been afforded an opportunity to appear personally to present and develop whatever evidence he may have had to support his remission claim. Based on the Service's non-compliance with the regulation, we conclude that the fine should be cancelled.

We emphasize that the fine would have properly been imposed had the procedure specified in the regulation been followed. As we have pointed out, however, certain requirements of the regulations were not observed. Were we to approve the imposition of the fine here, the regulations would be rendered meaningless. While we cannot condone the pilot's disregard of the law, we believe that under the circumstances, it is in the public interest to terminate the five-year-old struggle over $500 rather than to prolong it by a remand.

ORDER: The decision of the District Director is reversed.

FURTHER ORDER: Imposition of the fine is disapproved and the proceeding is cancelled.